/ THOMAS H. ALLIN *et al.*

*v.*

JAMES B. MILLISON.

| 72 | 201 |
| 121 | 195 |
| 72 | 201 |
| 163 | 475 |

1. FRAUD AND DECEIT—*false representations by vendor of a patent right.* Where the vendor of a new invention and patent right represents to one about to purchase territory that other parties who have purchased territory are selling the same, and doing well with it, and have made thousands of dollars, and that he had just received a letter to that effect, from one of such parties, such representations are material, and likely to influence the purchaser, and he has a right to rely upon them, and if he does so, and is thereby induced to purchase, and such representations prove to be false, the purchaser has an action against the vendor for fraud and deceit.

2. AGENT—*representations of, regarded as those of principal.* Where an agent is employed by the owner of a patent right, to induce parties to make purchases, and he, by representations to a party as to the quality and value of the patent, gets him to the negotiating point, and then turns him over to his principal, who closes the trade with him, the representations made by such agent are to be taken as those of the principal.

3. EVIDENCE—*when proper as to transactions between one party to the suit and strangers.* In an action against the vendor of a patent right, for fraud and deceit in the contract of sale, where it appears that the vendor had represented that other parties had purchased territory, and were doing well with it, evidence in regard to the transactions between the defendant and such other parties, and that they had made complaints of the worthlessness of the patent, to the defendant, is proper for the purpose of showing that the defendant knew the patent was without value, and that his representations to the plaintiff, in relation thereto, were made with knowledge of their falsity.

4. TENDER—*of article purchased not necessary before suit for fraud and deceit in the sale of it.* A purchaser has a right to maintain a suit against his vendor for fraud and deceit in a contract of sale without tendering back the thing purchased.

5. PAYMENT—*as between original parties.* The plaintiff in an action for fraud and deceit in a contract of sale, had given his notes for the article purchased, some of which he had paid, and one of which had been assigned, and was in judgment: *Held*, that the note assigned and in judgment should be regarded as paid, and that the plaintiff was entitled to recover as to it as well as to those actually paid.

WRIT OF ERROR to the Circuit Court of DeWitt county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Mr. S. G. MALONE, for the plaintiffs in error.

Mr. L. WELDON, Mr. A. B. BUNN, and Mr. JOHN W. SMITH, for the defendant in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

On the 27th day of July, 1867, Allin & Poston sold to Millison an undivided one-third interest in the exclusive right to manufacture, use and sell, within a certain territory, a certain match-safe, denominated the "Magic Match-Safe and Self-Lighter," for which letters patent had been recently issued, for the sum of $3333, for which Millison gave his three promissory notes, each of equal amount, payable in six, nine and twelve months, and secured by a mortgage on 160 acres of land. This was an action on the case, brought by Millison against Allin & Poston and Leforgee, to recover for fraud and deceit in the sale. The plaintiff recovered a verdict and judgment for $4447.77, the amount of the notes with interest. The defendants prosecute this writ of error.

It is insisted that the verdict is not supported by the evidence.

The fraud and deceit relied on consist in certain fraudulent representations alleged to have been made by Leforgee, as the agent of Allin & Poston. The representations are testified to by Millison, and denied by Leforgee. It is claimed this made no preponderance of testimony for the plaintiff; but it was for the jury to weigh this testimony and judge of the credibility of the witnesses, and we think there were circumstances disclosed in the testimony which would justify the jury in giving credence to the statements of Millison, rather than to those of Leforgee. The latter admits that he represented to Millison that "the thing was very valuable." Now, the testimony shows that, in repeated instances, within the

knowledge of Leforgee, persons to whom territory had been sold, after having gone on and canvassed their territory, and used endeavors to make sales. returned without having been able to effect sales. and made their complaints of the worthlessness of the invention, and that they were promised to have their money paid back, if they would keep still upon the subject. The jury might have concluded, from the evidence, that it was not the honest opinion of the witness that the invention was valuable, as he had represented, and that, in so representing, he knowingly falsified, and thereby cast discredit upon his whole testimony.

As between Leforgee and Millison, on the question whether Leforgee made the representations, the finding of the jury was upon a conflict of testimony, and we see no sufficient ground for disturbing it because it was in favor of Millison.

The alleged representations were not mere matters of opinion, or in commendation, but they were statements of facts, which were material, and, if true, would tend to give the match-safe a value such as would operate on the mind of Millison in making the contract. Millison made inquiry of Leforgee, in regard to three certain persons who he had heard had bought territory, as to how they were doing.

Leforgee represented to him that they were selling their territory, doing well with it, and had made thousands of dollars, and that he had just received a letter from one of them, so stating, in regard to himself.

It was in evidence that no such letter was written ; that all these persons, after actual trial in their respective territories, were unable to effect any sales of any account of the match safes, or of territory ; that they could make nothing out of the right, and they pronounced the match-safe and the patent right worthless.

This was a new article—a new invention. Millison could not, by mere examination of it, determine how it might be received by the public, and the statements that Leforgee made as to the success of parties engaged in the trade and

business of selling the machine and territory were material, and likely to influence Millison, and he had a right to rely upon them. His inquiry upon the subject evinces that he regarded the statements as material and important.

There can be, under the evidence, no separation of Leforgee from Allin & Poston in the transaction, so as not to affect the latter with the representations of the former, as it is claimed there should be. Whatever representations were made by Leforgee must be regarded as within the scope of his agency in procuring the making of contracts for the sale of this territory. The *inducing* part, in the effecting of these contracts, seems to have been assigned to Leforgee. He was in the employ of Allin & Poston, working out of doors, and, by his previous statements, representations and inducements, prepared the party proposing to buy to enter into the contract. His own statement is as follows: After a course of laboring with Millison, Leforgee says: " He (Millison) was ready to negotiate. I told the doctor (Millison) I had no power upon earth to make a transaction—would have to turn him over to Mr. Allin; came in and told Mr. Allin Dr. Millison wished to purchase an interest in the unsold territory. Mr. Allin and him negotiated then." This, the testimony shows to have been the course of business.

The representations, or statements, of Leforgee were the foundation of, or the inducement to, the agreement, and are to be taken as those of Allin & Poston.

It is insisted that the court erred in admitting evidence in regard to other transactions with other persons who had made similar purchases of territory from Allin & Poston, and complaints by them to the defendants of the worthlessness of their purchases; but this was proper for the purpose of affecting the defendants with the knowledge that the invention was without value, and Leforgee with knowledge of the falsity of the representations alleged to have been made by him.

It is insisted that there was something which was equivalent to a compromise of the subject matter of the suit, which

took place in January, 1868, by the extension of the time of the payment of the first note about to fall due, and the giving a mortgage by Millison on an additional 20 acres of land. Millison's statement in regard to this is, that 80 acres of the land he had mortgaged was railroad land, on which he had not made the last payment, and had no deed for it; that Allin got uneasy about the title, and proposed to release that 80, and extend the time of payment of the note 30 days, if Millison would give a mortgage on the 20 acres of land, to which the latter assented.

In view of all the evidence on the subject, we do not perceive that there was any such compromise or affirmance of the contract as should affect this suit. Millison was complaining that he feared he had been defrauded, but he was encouraged with the hope, by Leforgee, and by Allin & Poston, who were jointly interested with Millison in the patent right, that something might yet be made out of it, and was induced to continue, together with them, some effort to that end.

It is objected that there was no re-assignment of the interest purchased tendered back until in October, 1869. That was before the suit was commenced, and, besides, Millison had a right to sue the defendants for the fraud, without tendering back anything. We view the objection as without force.

It is objected that there could be no recovery in respect of the last note, as it had not been paid. It appears to have been assigned, and in judgment, and it might be regarded as if paid. The two other notes were proved to have been paid.

There was very much testimony in the case that this match-safe was of no value as an invention, and that the subject of the purchase was worthless. Upon the whole, we perceive no sufficient reason for a court's interference with the verdict of the jury, as being unsupported by the evidence.

Objection is taken to the giving and refusing of instructions. Some of the questions raised upon them are sufficiently disposed of by what has already been said. The criticisms upon the instructions in other respects, we do not

consider as of sufficient force to affect them with error, and, without reviewing the instructions in detail, we will say that, on a careful consideration of them, we do not find in them any material error.

The judgment will be affirmed.

*Judgment affirmed.*