# The Peter Schoenhofen Brewing Company, Appellee, v. Johanna Welbourn et al., On Appeal of Walter Goggil et al., Appellants.

## Gen. No. 17,792.

1. INJUNCTIONS—*when lie to enforce negative covenant.* Held, under the showing made that an injunction enforcing a covenant of a contract by which the defendant agreed not to sell upon certain premises other than a particular kind of beer, is properly granted.

230    APPELLATE COURTS OF ILLINOIS.

The Peter Schoenhofen Brewing Co. v. Welbourn, 166 Ill. App. 229.

2. CONTRACTS—*what consideration sufficient to support negative covenant.* Loss of money for the purpose of fitting up premises for saloon purposes constitutes sufficient consideration for a covenant not to sell upon such premises other than a particular kind of beer.

Bill for injunction. Appeal from the Superior Court of Cook county; the HON. W. FENIMORE COOPER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed November 28, 1911.

FRED PLOTKE and GEORGE E. SWARTZ, for appellants.

LACKNER, BUTZ & MILLER, for appellee.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

This is an action brought by the Peter Schoenhofen Brewing Company (appellee) in the Superior Court of Cook county, against Johanna Welbourn, William J. Welbourn, Walter Goggil, and Joseph Goggil (the last two of which are appellants herein), praying an injunction against all the defendants, prohibiting them or any of them from selling or permitting to be sold on the premises described in the bill, any beer other than that furnished by complainant.

The motion for a preliminary injunction was heard by the court below upon appellee's amended bill and six affidavits in support thereof, and six affidavits in opposition filed on behalf of the Goggils, and three additional reply affidavits for complainant.

The contract which appellee seeks to have enforced in this cause was made by it with defendants, Johanna and William J. Welbourn, on October 20, 1909, and it was recorded in the recorder's office of Cook county on November 10, 1910. This contract is under seal, and provides that in consideration of the appellee company making a loan of $5,500 to the said Welbourns to apply to completion of a building which the Welbourns were then intending to erect upon the premises owned by one of them (Johanna), and to be used by

them for a hotel and saloon business, the Welbourns would occupy the same for hotel and saloon purposes and would therein conduct and carry on, during the period of ten years next following their occupancy of the building, a reputable saloon and hotel business, and would carry in stock at all times, during the ten years, beer to supply the trade at said place, which should be purchased of the appellee company; and it provides, also, that the Welbourns would not permit beer manufactured by any other person to be sold, used, handled, or given away in or about said premises by themselves, their agents, servants, representatives or assigns, and that the Brewing Company should make the loan and furnish the Welbourns with sufficient beer to supply the demands of the trade at that place, such beer to be of merchantable quality and at such price or prices as the Brewing Company charged a majority of its other customers in Cook county for beer of like quality, etc.

The agreement also provided that in further consideration of the loan, the Welbourns further agreed that if at any time during said period of ten years, either they themselves, or their agents, representatives, servants or assigns, should commit any breach of the covenant covering the sale of beer in and about the premises, other than that manufactured and sold by the appellee Brewing Company, the company might at once, without notice, appear in any court of competent jurisdiction and enjoin the continuance of any such breach, and by injunction stop the sale of such other beer, whether the loan had been repaid or not. The contract further provided that if at the expiration of the said ten years, the loan and all the interest thereon should not have been then fully repaid, the agreement should continue and remain in full force until the loan, together with interest thereon, should have been fully repaid.

The amended bill further averred that the Brewing Company advanced $5,500 to the Welbourns, and an additional sum of $1,202.08, to enable them to complete and pay for the building, and begin the saloon business therein; and, also, that the Brewing Company purchased and placed in said saloon premises an outfit of saloon furniture and fixtures, which it loaned to the Welbourns without cost to them, to enable them to proceed with the business contemplated.

It was further averred that on or about the 12th of October, 1910, the saloon premises being then ready, the Welbourns engaged therein in the saloon business, and continued to purchase from the Brewing Company all the beer used and sold thereon, in conformity with the provisions of the contract; and that subsequently, and about the 15th of May, 1911, Johanna Welbourn, being the owner or said property, executed and delivered to the Goggils a lease of the saloon premises for a period of five years, beginning May 15, 1911, and sold to them the stock of liquors on hand, and the good will of the saloon business; that such sale was made and said lease executed to the said Goggils upon the express agreement that they would fulfill and carry out all the terms of the agreement between the Welbourns and the Brewing Company, all of which were then well known to the Goggils; and that a part of the consideration for the sale, and the making of the lease to the Goggils, was their own agreement to carry out the terms of the contract with the Brewing Company.

By their sworn answer, the Goggils deny that they in any way bound themselves to observe, or even knew of the alleged agreement between the Welbourns and the Brewing Company. They admit that they have refused to carry out its provisions, and say that they are taking beer from the Home Brewery under a five year contract with it. They admit being in possession of part of the premises in question as lessees of the

Welbourns, and aver that at the time they leased them (May 17, 1911), they bought the stock in trade, good will and the saloon business of the Welbourns, for which they paid about $900; that the Home Brewery, from which they were procuring beer, is a corporation which operates on the co-operative plan and sells only to its members; that about the time of making the lease, they became members of said corporation and contracted to take all their beer from it for the period of the term of their lease.

At the time of the hearing of the motion for a preliminary injunction, there was on file the sworn answer of the two Goggils. The interlocutory order (or decree) stated that the court had examined the affidavits, specifying them, and the amended bill of complaint, and found the equities to be with the complainant, and granted the injunction prayed for.

The Goggils appealed and insist that the court below erred in finding that the equities were with the plaintiff, and granting the injunction; and they further contend that the court erred in not considering, upon the application for the injunction, their answer to the amended bill, which was then on file.

We have considered in detail all the points made in the brief and arguments for both sides, together with the numerous authorities cited in their support, and have also carefully examined the affidavits heard by the court below. The view we take of the controversy renders unnecessary an extended discussion of the arguments and authorities cited.

Upon the contentions "that the preliminary injunction was improvidently granted" because it compelled the doing of affirmative acts, and the further one which urges that an interlocutory injunction should not be granted except to avoid irreparable loss to complainant; as to the first we think the injunction clearly did not require the performance of any affirmative acts on the part of appellants, but, in its effect

234 APPELLATE COURTS OF ILLINOIS.

The Peter Schoenhofen Brewing Co. v. Welbourn, 166 Ill. App. 229.

and character, was merely prohibitory. And, second, the case made by the record is one which fully justifies the interposition of an injunction by a court of equity. Abundant authorities exist for the granting of an injunction to enforce restrictive negative agreements without allegations or proof of irreparable injury, because, from the very nature of the case, the remedy at law is inadequate. 22 Cyc. of Law and Procedure, page 860; also Ferris v. American Brewing Co., 155 Ind. 539-544.

Appellants contend that the contract between the Brewing Company and the Welbourns was a personal undertaking between the parties and one which was in no manner binding upon the Goggils, whose rights and liabilities were determined solely by the lease between themselves and the Welbourns; and they further contend that the filing of the Brewing Company-Welbourn contract with the recorder of deeds did not constitute notice to the Goggils. Upon the record before us, we do not consider it necessary to take up these suggestions in detail.

It was entirely competent for the Brewing Company and the Welbourns to enter into a contract, such as the one set out in the bill. The loans of $5,500 and $1,202.08, made to the Welbourns, with which to construct and finish the building so as to adapt it to saloon purposes, and the placing in the premises an outfit of saloon furniture and fixtures loaned without cost to the Welbourns, together with the agreement of the Brewing Company to supply the beer, undoubtedly, constituted a good and sufficient consideration for the restrictive agreement then made by the Welbourns. The entire transaction clearly shows the purpose of the parties to have been the establishment and maintenance, for a given number of years, of a reputable saloon upon the premises in question, and, by selling beer of the Brewing Company, to thus insure a market for that quantity of its product. We think the

clear and well-understood agreement between the Brewing Company and the Welbourns was one which courts of chancery clearly could enforce; indeed, the agreement itself provided that if the Welbourns, their servants, agents or assigns, should commit a breach of the agreement with respect to sales of beer in and about the premises, or permit the sale of any other beer thereon, then the Brewing Company might, without notice, enjoin such breach and sale. It appears that for several months this agreement had been kept by the Welbourns, and that appellants themselves received from appellee one delivery of its beer, which was delivered by it apparently under its contract with the Welbourns, and we think the record justifies the conclusion that appellants not only knew of this Welbourn agreement at the time they purchased the saloon business and rented the premises in question, but that, in fact, they agreed with the Welbourns that they would fulfill and carry out all its terms. It is true the affidavits upon this point are conflicting. No substantial purpose would be subserved in setting out in detail the portions of the affidavits from which we have reached this conclusion. It is sufficient to say that, after due consideration of each of them, we think the court below was justified in reaching the conclusion that appellants bound themselves to observe and keep the original agreement made by the Welbourns, and, accordingly, fully justified it in granting a preliminary injunction as prayed for in the amended bill.

The injunctional order, as actually entered, is too broad, in that it does not sufficiently restrict the terms of the injunction to make it conform to the facts disclosed in the record, and, though appellants have not specially complained of this, and are not, at present, suffering any injury on account of it, yet it should be modified in the particular mentioned.

The action of the court in granting the preliminary

injunction was not erroneous, and its decree will, there-fore, be affirmed.

*Decree affirmed.*