**Newco Laundromat Co., Appellee, v. A L D, Inc., Appellant.**

**Gen. No. 47,261.**

First District, Second Division.
March 11, 1958.
Released for publication April 10, 1958.

Frank J. Wright, Wright & Wright, of Chicago, for appellant.

Jacob Shamberg and Fred Herzog, of Chicago, for appellee.

JUSTICE MURPHY delivered the opinion of the court.

This is an appeal from a decree granting a temporary injunction, restraining defendant from delivering or making available laundromat equipment for use in a specified area in Chicago, Illinois.

Plaintiff, organized to conduct a self-service laundromat store, began negotiations in 1956 to buy Westinghouse laundromat equipment from defendant sole vendor of that equipment in Chicago. Because plaintiff was having difficulty arranging its lease at 2707 North Clark Street, its order from defendant was made contingent on getting the lease. Before this order was given, the parties discussed, and plaintiff asked for, a written assurance that defendant would not sell its

equipment to competitors within a several block area. This request was because of knowledge that defendant was negotiating a sale of its equipment to a competing laundromat at 2542 North Clark Street. Defendant declined to accede to the request. On February 6, 1957, plaintiff signed the final order for equipment, paid $15,000 for the equipment and $9,000 for its installation. In April, plaintiff learned that defendant was to deliver its equipment to the laundromat at 2542 North Clark Street. After plaintiff demanded that the delivery be not made at the 2542 North Clark Street laundromat, and its demand was rejected, plaintiff began suit.

The chancellor heard evidence upon the complaint and answer. The theory of the complaint, and plaintiff's evidence, is that defendant's representative, Johnston, made an oral agreement to protect plaintiff by refusing to sell laundromat equipment within a three-block radius of plaintiff's store; that this agreement was made with the knowledge that defendant was negotiating a sale with the owners at 2542 North Clark Street simultaneously with the negotiations with plaintiff; that Johnston informed plaintiff that whichever operator signed first, the other would be "out"; that plaintiff was induced to sign the contingent order on Johnston's assurance that while defendant could not agree to a protective area of six blocks, requested by plaintiff, defendant would agree to a three-block area in accordance with its policy, but that this could not be in writing; that Johnston "felt sure" that the contingent order would assure cutting off negotiations with the laundromat at 2542 North Clark Street; that when the final order was signed, Johnston, in the presence of plaintiff's representatives, telephoned his superior about a written agreement to protect plaintiff within the three-block area; and that Johnston then informed plaintiff there could be no written agreement, but that

the negotiations with the other laundromat were "cancelled" and the three-block area protection was agreeable.

On May 13, 1957, plaintiff's representative told Lyson, defendant's district sales manager, that he had seen a sign in the window at 2542 North Clark, which indicated that a Westinghouse laundromat was to open very shortly at that location; that this was a clear violation of all understandings which plaintiff had with defendant; that plaintiff had no alternative but to file an injunction suit, and that Lyson replied that he could not do anything and maybe an injunction would be the answer. This suit followed.

Defendant admitted in its answer that it advised plaintiff that it was its policy not to sell equipment to businesses in close proximity, one to another, and admitted that plaintiff was informed that negotiations were pending for the proposed establishment of another such business at 2542 North Clark Street, but specifically denied any agreements or representations about a three-block radius restriction, and specifically denied that a representative of defendant advised plaintiff that defendant would not sell equipment for use at 2542 North Clark.

Defendant's representative admits that he brought the attention of Cohen and Newman, plaintiff's representatives, to the 2542 North Clark Street store in January, and that when the final order was signed on February 6, 1957, he did make a telephone call to Lyson, because Cohen asked for a written statement of some territorial protection, and as a result thereof he told Cohen that Lyson had informed him they could not give any written protection for territorial rights, but that normally they tried to keep people away from close proximity to each other. A district manager of the defendant testified that it was the policy of defendant not to sell to a store that was so close to another

store that both stores would suffer from competition, but that no customer received from defendant a contract right or claim to a particular territory.

Lyson testified that he told Johnston, defendant's salesman, over the telephone, that "We don't sell franchises and we don't protect territory. We can't."; that 2542 North Clark Street did not enter into that conversation nor was there any question of another place of close proximity in the conversation; and that there was no policy concerning territories or proximity regarding sales to businesses in close proximity. He later said defendant had a policy with respect to not selling equipment for use in too close proximity to another location; and that "I was in error in my testimony the other day in the understanding of the word 'policy.' . . . If in our opinion the store is too close in proximity, it would be our practice not to sell."

On June 10, 1957, the trial court entered an order for a temporary injunction, restraining defendant from in any manner delivering or making available laundromat equipment for use at 2542 North Clark Street or for use in any premises located within three blocks of 2707 North Clark Street, Chicago, Illinois.

■ The question on appeal is whether or not the chancellor abused his discretion in granting the temporary injunction. On the evidence in the record and the law applicable thereto, this court believes the trial court was well within its discretion in granting the temporary injunction complained about. The propriety of granting a temporary injunction depends on the facts of each particular case and the general principles of equity as relating to injunctions, and the right to exercise common sense in the granting or refusing of injunctions is one of the fundamental prerogatives of a court of chancery. 43 C. J. S., sec. 12, p. 419; O'Brien v. Matual, 14 Ill.App.2d 173 (1957).

The principal fact issue before the chancellor pertained to the understanding between the parties regarding the protected area for plaintiff. Plaintiff relied on its testimony of an oral agreement by defendant to limit competition within a three-block radius.

If the court had permitted defendant to proceed with its sale of equipment to 2542 North Clark, or to any other prospective purchaser in the three-block area, it is not difficult to perceive that it would be impossible to restore plaintiff to its position at the time it requested the temporary injunction, and that damages could not be gauged with any certainty, keeping in mind that plaintiff's enterprise was newly established. In balancing the inconveniences to the parties here, there would be less inconvenience to the defendant by the allowance of the temporary injunction. Any other conclusion would put a premium upon the wilful disregard of claimed rights until the court has had an opportunity to consider the cause upon its merits.

Defendant contends that the persons who desired to establish the laundromat at 2542 North Clark should have been made parties defendant, i. e., that they were indispensable parties, who were materially affected by the decree. That the courts do not consider persons indirectly affected by a decree to be indispensable parties, or parties without which an equity court will not proceed to an injunctive decree, is illustrated in many cases. In Illinois Power & Light Corp. v. Consolidated Coal Co., 251 Ill. App. 49, request was made for injunctive relief against invasion of territory served by plaintiff, the incidental effect of the injunction being to declare void certain contracts with customers served by defendant in the territory in question. It was decided that the contract customers were not necessary parties to the suit, and on page 76, the court said:

"The rights of appellant are not dependent upon the validity or invalidity of these contracts and cannot be abated or destroyed by contracts entered into between appellees and third parties."

This theory is followed in United States v. Western Union Telegraph Co., 53 F. Supp. 377; Baltimore & Ohio R. Co. v. Chicago River & Indiana R. Co., 170 F.2d 654; The Peter Schoenhofen Brewing Co. v. Welbourn, 166 Ill. App. 229. There is no merit in the contention.

 Another contention of defendant is that plaintiff failed to set forth in its amended complaint the necessary allegations constituting the action of fraud. We have examined the amended complaint and the evidence and find both are sufficient to sustain the decree. Fraud may be well pleaded, even though the conduct referred to is not alleged expressly to be "fraudulent," provided the facts alleged are such as constitute fraud in themselves or are facts on which fraud will be necessarily implied. The acts charged are no less fraudulent because the word "fraud" or "fraudulent" is not used by the pleader in characterizing them. In other words, an allegation of facts from which the conclusion of fraud necessarily results is sufficient. 24 Am. Jur., Fraud and Deceit, sec. 244, p. 74; Albers v. Dressel, 307 Ill. App. 470.

 In its answer defendant alleged that the agreement entered into on February 6, 1957, contained the following:

"5. Distributor makes no representations or guaranties, express or implied, in respect to any of the equipment or coin meter assemblies covered by this order, except that it will deliver good title to said equipment sold, free from all liens and encumbrances. Warranties by manufacturers of equipment are limited to such of their standard written warranties as may accompany

501

individual items of equipment ordered hereby. No one is authorized to assume any other liability in connection with the sale of such equipment or materials."

Defendant, argues in view of this provision, that the trial court was in error in permitting and considering proof of defendant's agent's oral assertions and representations, and cites a number of cases to sustain the well-known rule that all preliminary negotiations, whether oral or written, are merged in the written contract, but we believe these citations do not apply here. We think it was competent to show the oral representations of defendant's representatives to induce plaintiff to enter into the sales agreement of February 6. It is permissible to allow testimony of a collateral, contemporaneous or antecedent agreement between the parties which was not reduced to writing, where the same is not in conflict with the terms of the written instrument. Brady v. Marshall, 302 Ill. App. 151; Durham v. Lathrop, 95 Ill. App. 429.

■■ Defendant claimed that plaintiff did not introduce evidence showing authority of an agent of defendant to grant territorial rights to plaintiff, and argues that no authority, express, implied or apparent, was shown to exist in favor of the salesman of defendant to grant territorial rights to plaintiff. Cases on fraudulent statements made by a salesman to a prospective purchaser, as an inducement for the entering of a contract, hold that the scope of an agent's authority may be shown by circumstances as well as by proof of express authority, and the principal is just as much bound by the authority his acts appear to give as by that which actually has been given. Restatement of Agency, sec. 258; Allin v. Millison, 72 Ill. 201; Vetesnik v. Magull, 347 Ill. 611; Mulhern v. Public Auto Parks, Inc., 296 Ill. App. 238; Air Conditioning Corp. v. Honaker, 296 Ill. App. 221.

502

■ An injunction restraining the breach of an agreement is a negative specific enforcement of that agreement and will be used in a proper case if this is the only practical mode of enforcement. Pomeroy's Equity Jurisprudence, Fifth Edition, 1941, Vol. 4, § 1341. We believe the trial judge was correct in finding this to be a proper case, and that plaintiff had no adequate remedy at law. The Peter Schoenhofen Brewing Co. v. Welbourn, supra; O'Brien v. Matual, supra.

In accordance with the foregoing views, the order of the trial court is affirmed.

Affirmed.

KILEY, P. J. and LEWE, J., concur.