(No. 35826.—

THE CITY OF EVANSTON, Appellee, *vs.* STANLEY J. PI-
OTROWICZ, JR., Appellant.

*Opinion filed December 1, 1960.*

Virgil C. Lutrell, of Chicago, for appellant.

Rex Bullinger, and Righeimer & Righeimer, both of Chicago, (Frank S. Righeimer, of counsel,) for appellee.

Mr. Justice Bristow delivered the opinion of the court:

Appellee, the city of Evanston, on February 27, 1959, filed its petition in the superior court of Cook County seeking to condemn for use as a parking lot, a vacant tract of unsubdivided land. The appellant, Stanley J. Piotrowicz, Jr., party defendant to the petition, filed a traverse to challenge petitioner's right to condemn because of noncompliance with section 2 of the Eminent Domain Act, (Ill. Rev. Stat. 1957, chap. 47, par. 2,) which section requires an attempt to agree with the owner as to the compensation to be paid for the property before condemnation can be filed. After a hearing on the traverse, the same was overruled and thereafter a jury trial was had on the merits.

At the compensation trial, two expert witnesses testified for appellee and three expert witnesses testified for appellant as to the highest and best use of the land. Appellee's witnesses found that its best use was for two-flat buildings, apartments, or row houses, and both found the fair cash value to be $10,000. The three expert witnesses for defendant evaluated the property at $40,000, $20,000

and $24,000—each considering its highest and best use was for commercial use, such as retail stores or shops, with offices or apartments above.

Petitioner put in evidence five sales of vacant property in the area—in each instance the sale property was zoned residential or for apartments, duplex residence or two-flats; the condemned property was zoned commercial. The jury returned a verdict fixing the compensation at $11,000; a judgment order was entered on the verdict.

The first alleged error of the trial court complained of was its overruling of appellant's traverse challenging petitioner's right to condemn because of noncompliance with section 2 of the Eminent Domain Act. (Ill. Rev. Stat. 1957, chap. 47, par. 2.) The pertinent part of that section provides that a petition to condemn may be filed only where "the compensation to be paid for * * * the property * * * cannot be agreed upon by the parties interested."

The city contends that the trial court's ruling contrary to the defendant's traverse is not preserved for review because the defendant's post-trial motion did not assert this adverse ruling of the trial court as a ground for setting aside the judgment. We do not agree. Section 68.1 of the Civil Practice Act (Ill. Rev. Stat. 1957, chap. 110, par. 68.1,) does not alter the well-settled rule, relied upon by the bench and bar since the State's earliest days, that no motion for a new trial or formal objection to rendition of a judgment is necessary in matters tried without a jury and can serve no purpose in preserving questions for review on appeal. *Atlas Finishing Co.* v. *Anderson,* 336 Ill. App. 167, 83 N.E.2d 177; *Miller* v. *Anderson,* 269 Ill. 608; *Trout* v. *City of Herrin,* 245 Ill. App. 346; *Climax Tag Co.* v. *American Tag Co.* 234 Ill. 179; *Jacobson* v. *Liverpool and London and Globe Ins. Co.* 231 Ill. 61; *Niagara Fire Ins. Co.* v. *Forehand,* 169 Ill. 626.

Although the issues raised by the traverse were questions of fact, they were properly not tried by a jury. (*Harvey* v.

*Aurora and Geneva Railway Co.* 174 Ill. 295.) No motion for new trial or its equivalent was necessary to preserve for review the question whether the trial court's ruling on the issues made by the traverse was correct.

The city cites *Central Illinois Public Service Co.* v. *Rider,* 12 Ill.2d 326, in support of its contention. The case is instantly distinguishable. In the *Rider case,* the defendant sought affirmative relief in the form of an award of damages to lands not taken. We held that his failure to file a petition with a description of the property sufficiently definitive to identify it was a jurisdictional defect. In this case the defendant seeks no affirmative relief. He complains of an alleged error of the trial court in its ruling that, prior to the filing of the petition, petitioner evidenced a *bona fide* attempt to agree upon compensation and that such attempt was made with the owner or one proved to be the owner's agent for purposes of such negotiation. No jury having intervened, the authorities cited above are applicable. They declare that no post-trial motion was necessary.

The defendant's contention with respect to the trial court's ruling on the issue of fact raised by the traverse is before us for review. However, we find that contention to be without merit.

The evidence adduced at the hearing on the traverse indicated that Stanley J. Piotrowicz, the father of defendant, Stanley J. Piotrowicz, Jr., was in the real-estate and building business, and had had an interest in the condemned parcel since 1927; that he paid the taxes, expenses and purchase price on the property, though title to the property was in the name of his son. The father further testified that he had plans to build a drive-in restaurant on the property and that around about January, 1959, had sought the approval of the building department of the city of Evanston to do so, as well as requesting aid from the city traffic engineer to outline a driveway on the property. At that time he spoke with Joseph L. Rose, the director of public works for

the city of Evanston, and in the course of conversation stated that the vacant parcel was worth $40,000. The testimony of Rose on this point is that Piotrowicz, Sr., had said, "$37,000 was about as low as he would go." The father further testified that in the latter part of February, 1959, prior to the filing of the petition, he had another conversation with Rose, who had called and again asked what Piotrowicz wanted or would take for the property. Piotrowicz at that time again replied that he wanted $40,000, to which Rose purportedly stated that the price was too high. The testimony of Rose as to this conversation adds that the appraisal figure of $12,000 was stated to Piotrowicz, Sr., in addition to the fact that he, Rose, was authorized to make an offer for that amount. Rose further testified, "I told him I thought that was high and if he changed his mind to call me back." Also, "I told him the price seemed awful high to me and way out of line, and Stanley agreed to that." When asked by the court whether he was acting for his son, the witness Piotrowicz, Sr., replied, "Yes, my son generally takes my advice." The witness said that the next time he heard from the city was when "my son brought me the summons."

It is the settled law of Illinois that where a defendant in a condemnation suit contests the petitioner's right to condemn by traverse, the burden is upon the petitioner to maintain its right to condemn by proper proof. (*Board of Education* v. *City of Chicago,* 402 Ill. 291; *Department of Public Works and Buildings* v. *Lewis,* 344 Ill. 253; *Lieberman* v. *Chicago and South Side Rapid Transit Railroad Co.* 141 Ill. 140.) The burden in such instance is upon the petitioner to introduce such evidence as would, *prima facie* at least, prove the disputed averments. *City of Chicago* v. *Lehmann,* 262 Ill. 468; *City of Chicago* v. *Jewish Consumptives Relief Society,* 323 Ill. 389.

The facts clearly indicate that petitioner and Piotrowicz, Sr., were approximately $28,000 apart when negotiations

terminated. In addition to this substantial difference in relation to the value of the property as determined by the jury or even the range of the expert witness testimony, the fact that Rose, in mentioning the authorization of $12,000, elicited from Piotrowicz, Sr., the continued demand of $40,000 rather strongly suggests that the parties were unable to agree. This is made more apparent when contrasted with Rose's testimony that Piotrowicz, Sr., stated during the course of their earlier conversation that $37,000 was about as low as he would go.

Although the mere difference in amount between the parties is not determinative of whether a *bona fide* attempt to agree has been made, (*County Board of School Trustees v. Batchelder,* 7 Ill.2d 178,) the court did not commit error. The evidence, though disputed, was sufficient to sustain the trial court's ruling. *Ward* v. *Minnesota and Northwestern Railroad Co.* 119 Ill. 287; *Fayette* v. *Whitford,* 365 Ill. 229; *Lake Shore and Michigan Southern Railway Co.* v. *Baltimore and Ohio and Chicago Railroad Co.* 149 Ill. 272.

Defendant however makes the further contention that petitioner did not adduce any evidence from which a *prima facie* showing of agency or authority of Piotrowicz, Sr., to act for his son Piotrowicz, Jr., could be reasonably inferred.

Agency may be established and its nature and extent shown by parol evidence, whether direct or circumstantial, and reference may be had to the situations of parties and property, acts of parties, and other circumstances germane to the question, and if the evidence shows one acting for another under circumstances implying knowledge on the part of the supposed principal of such acts, a *prima facie* case of agency is established. E.g., *Webb* v. *Marchesi,* 24 Ill. App. 2d 75, 163 N.E.2d 727; *Newco Laundromat Co.* v. *Ald, Inc.* 16 Ill. App.2d 494, 148 N.E.2d 820.

It is equally well settled that where the existence of an agency is an issue in a case where the alleged principal is a party, the mere statements of the agent made out of the

presence of the principal and not subsequently approved by him are not admissible to establish the existence of such relationship. (*Practor* v. *Tows,* 115 Ill. 138; *City of Chicago* v. *Jewish Consumptives Relief Society,* 323 Ill. 389; *Mullanphy Savings Bank* v. *Schott,* 135 Ill. 655.) This is in recognition of the rule that the principal is the source of power and that the agent's authority can be proved only by tracing it to that source in some word or act of the alleged principal. (*Merchants' National Bank* v. *Nichols & Shepard Co.* 223 Ill. 41.) But this principle which bars the admission of the agent's statement is not to be confused with the rule which permits an alleged agent to be called as a witness for the purpose of establishing the existence of an agency. E.g. *Albers* v. *Zimmerman,* 376 Ill. 306; *Fredrich* v. *Wolf,* 383 Ill. 638.

The evidence portrayed Piotrowicz, Sr., generally, as in the real-estate and building business; that he had over the years dealt specifically with the property and had handled varied business concerning it, including its use and development. The extent of the father's authority is further evidenced by the son's action in turning over the condemnation summons to this father. That the father and son were otherwise in close contact and counsel appeared from the evidence and its inferences. On the basis of all the evidence we cannot say as a matter of law the trial court's determination of the issue was erroneous. *Albers* v. *Zimmerman,* 376 Ill. 306.

Defendant's second contention of error is founded upon the admission in evidence of testimony concerning sales of property zoned differently than the condemned property. To pass upon this, a full discussion of the facts is essential.

The subject tract of vacant unsubdivided land is located on the southeast corner of Mulford Street and Dodge Avenue in the southwest section of the city of Evanston. This parcel of land has a frontage of 110 feet on Mulford (an east and west street) and 80 feet on Dodge Avenue

(a north and south street). Howard Street, which is the dividing line between Evanston and the city of Chicago, is three blocks south of Mulford.

The tract is north of and immediately adjacent to a railroad track and embankment as well as a former North Shore and Milwaukee Railroad station building, which had not been used for such purposes for 8 or 10 years, but which at the filing of the petition was occupied by an electrical supply company. Across Dodge, to the west, is a 45-acre city park. Across Mulford to the north of the tract, were residential vacant lots, but at the time of the trial in October, 1959, the erection of a house of worship had been commenced on the lots. Across Dodge Avenue and to the south is vacant property and then a small home and apartment development. Two blocks north of the southwest corner of Oakton and Dodge is a grammar school and some commercial property.

Howard Street, three blocks south at Dodge Avenue and for several blocks east and west of Dodge, is developed partly as commercial and partly for apartment buildings. There are restaurants, gas stations, a beauty shop, drug stores and other small commercial buildings at Dodge and Howard. About a half mile east on Howard Street is a large shopping center, and, east of that, Howard Street is largely of commercial development.

The subject property at the time of the filing of the petition and for some years prior thereto had been zoned a commercial district or "F," which permitted uses applicable to zone "E," multiple-family dwelling districts, and other uses, including the usual retail stores and shops, but excluding 22 designated uses such as public garages, coal yards, lumber yards, etc. Under the commercial zoning, buildings are limited to 2½ stories or 35 feet with 27-foot front yards, back yards of 20% of lot depth but not over 25 feet and no side yard requirements except for dwellings.

The only other property in the immediate area which is

zoned commercial are three tracts on Dodge and south of Mulford immediately adjacent to the railroad right of way, and a parcel a short distance from the railroad housing, improved and used by a diaper service concern. All the rest of the area is zoned for single-family or two-family dwellings.

The condemned parcel, at the filing of the petition, was burdened with an easement for a 12-inch gas main which was already in place in the property. The easement carries with it the right to excavate the parcel to repair or reconstruct the gas main.

In addition to the two expert witnesses, who found the land's highest and best use to be for two-flat buildings, apartments, or row houses, petitioner also called three sales witnesses. The latter testified to five sales of vacant property fronting on Dodge Avenue and within two blocks of the subject property, of reasonably similar size and all of which had been sold from three years to one year prior to the condemnation proceedings. All were sold for cash. Defendant's objections to the sale price testimony, on the grounds of there being no showing as to the terms of the sale and the failure of petitioner to produce the best evidence of the sales, were properly overruled. *Forest Preserve Dist.* v. *Kean,* 298 Ill. 37.

Defendant's counsel, however, further objected to such testimony on the specific ground that there had been no showing of a zoning similarity to have existed between the properties sold and the condemned tract. Defendant contends that this difference renders the sale properties so dissimilar as to preclude their evidentiary worth, that the testimony concerning such sales could only have misled the jury, and, moreover, that there was no showing of the sale to have been made under circumstances indicating that it was sold freely and in the open market. Assuming without deciding that defendant's specific objection was timely or continuing as to each sale, the trial court in admitting such

evidence acted properly within the scope of its discretion.

While past decisions of this court have firmly established the use of voluntary sales of similar property as collateral evidence of value, the party offering the sales claimed to be comparable has the burden of proving, as a preliminary to the introduction of the prices involved in such sales, that they are similar both in character and locality to the land in controversy. (*Forest Preserve Dist.* v. *Draper,* 387 Ill. 149; *City of Mt. Olive* v. *Braje,* 366 Ill. 132.) While the mere proximity of land is not the sole test, a determination of the issue depends upon the character of the land involved and the facts and circumstances of the particular case. *City of Chicago* v. *Harbecke,* 409 Ill. 425.

As we have also stated in the past, no fixed or general rule has or could be laid down which governs the degree of similarity that must exist between the properties sold and that condemned to make evidence of the sale or sales admissible; rather, the admissibility of such evidence must in each instance be determined by the trial judge within the proper limits of his discretion. (*City of Chicago* v. *Vaccarro,* 408 Ill. 587; *Forest Preserve Dist.* v. *Kercher,* 394 Ill. 11.) This court, moreover, has recognized that "similar" does not mean "identical," but means having a resemblance, and that property may be similar for purposes of fruitful comparison, though each possesses various points of difference. (*City of Chicago* v. *Vaccarro,* 408 Ill. 587, and *Forest Preserve Dist.* v. *Lehmann Estate, Inc.* 388 Ill. 416.) Wherever there is a reasonable basis for comparison between the property sold and that being condemned, evidence of the sale is not incompetent, and the dissimilarities between the properties, which are declared to the jury, affect the weight and value of the testimony rather than its competency. *Forest Preserve Dist.* v. *Folta,* 377 Ill. 158; *City of Chicago* v. *Vaccarro,* 408 Ill. 587.

In our opinion, as applied to the facts in the instant case, the existence of zoning dissimilarity does not constitute

such degree of dissimilarity as to render the evidence of such sales incompetent.

In the case of *Forest Preserve Dist.* v. *Kercher,* 394 Ill. 11, evidence as to sale of property zoned differently from the condemned property was admitted in evidence. The sale tract, as in the instant case, was similar in locality and in the lay of the land but differed in character and the use to which it could be put because of the passage of the zoning ordinance. This court sustained the trial court in finding that while dissimilarities did exist there was a reasonable basis for comparison, and therefore sustained the trial court's exercise of discretion. The jury had inspected the premises, and the testimony as to the effect of the zoning ordinance was clearly presented by the evidence.

In the case of *City of Chicago* v. *Vaccarro,* 408 Ill. 587, testimony as to a sale of property in fact zoned for business was admitted in evidence where the land condemned was zoned for commercial use. The testimony as to this sale was admitted over the land owner's objection that the property sold was different in character from the property being condemned and that there was no showing that the sale was a voluntary one. The witness, a real-estate broker who made the sale, testified that the owner had listed the property with him for sale and that he knew nothing about the owner and had no knowledge as to the circumstances which brought about the sale or whether the owner was at all compelled to sell the property. We held that the trial court had not abused its discretion in refusing to exclude evidence of the sale on the ground that the sale was not voluntary, citing *South Park Comrs.* v. *Livingston,* 344 Ill. 368, *Forest Preserve Dist.* v. *Eckhoff,* 372 Ill. 391, and further found that a reasonable basis for comparison did exist between the property sold and that being condemned. For that reason, such testimony was competent.

The verdict was within the range of the testimony, the jury inspected the premises, and the testimony as to the

difference and effect of the zoning ordinances was clearly presented. In the instant case the jury would not have been misled by the challenged testimony. The trial court acted within its sound discretion in admitting proof of these sales.

In view of the foregoing analysis the judgment of the superior court is affirmed.

*Judgment affirmed.*