**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240357-U

Order filed June 11, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| MAUREEN E. MCCOY, as Independent Representative of the Estate of Jeffrey McCoy, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-24-0357 Circuit No. 19-L-1299 |
| | ) ) | Honorable |
| MARCORP FINANCIAL, LLC, a Delaware Limited Liability Company, SERVICES CAPITAL, LLC, an Illinois Limited Liability Company, and MICHAEL FAZIO, an Individual, | ) ) ) ) ) | Neal W. Cerne, Judge, Presiding. |
| | ) | |
| Defendants-Appellants. | ) | |

_____

JUSTICE BERTANI delivered the judgment of the court.
Presiding Justice Brennan and Justice Anderson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: We affirm the circuit court's findings on plaintiff's breach of contract and Illinois Wage Payment and Collection Act claims and defendant's breach of fiduciary duty claims; we reverse the court's denial of prejudgment interest on defendant's loan claim and the granting of attorney fees for plaintiff.

¶ 2        This matter arises out of plaintiff Jeffrey McCoy's employment relationship with defendant MARCorp Financial, LLC (MARCorp). McCoy brought suit against MARCorp and defendant Michael Fazio, MARCorp's cofounder, for failure to pay a discretionary bonus that Fazio claimed was contingent on McCoy's continued employment. MARCorp filed a counterclaim alleging McCoy owed money on a loan and that he breached his fiduciary duties to the corporation while he was both an employee and officer by investing in a corporate opportunity and orchestrating the mass resignation of several members of the management team. After a bench trial, the circuit court found in McCoy's favor on the unpaid bonus and breach of fiduciary duty claims and in MARCorp's favor for the loan. After posttrial motions, MARCorp appealed the court's decisions on the unpaid bonus claims, breach of fiduciary duty claims, the award of attorney fees, and its denial of prejudgment interest on its loan claim. We affirm in part, reverse in part, and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4        McCoy filed suit against MARCorp on November 18, 2019, for payment of his deferred bonus under breach of contract and the Illinois Wage Payment and Collection Act (Wage Act) theories. 820 ILCS 115 *et seq.* (West 2022). In response, MARCorp filed a counterclaim for repayment of a $200,000 loan it gave McCoy in February 2018, and breach of fiduciary duty for investing in a business opportunity while employed at MARCorp and for organizing the resignations of other members of the management team. Regarding the loan claim, MARCorp alleged that McCoy agreed that interest would accrue on the loan at a rate of 2% interest per year. MARCorp's answer also included an affirmative defense under the same breach of fiduciary duty theories as the counterclaim. After McCoy passed away, his wife, Maureen E. McCoy, continued the litigation as the independent representative of his estate.

¶ 5        The case proceeded to bench trial in March 2024. During trial, the evidence established that Fazio and McCoy founded MARCorp in 2012. MARCorp's purpose was to invest in other businesses through loans. McCoy was employed as president of MARCorp and owned a 1% interest in the company. A trust controlled by Fazio owned the remainder. Both acted as MARCorp's managers. McCoy acted as the local manager and ran the day-to-day business. Section 3.4 of the MARCorp operating agreement signed by Fazio and McCoy provided that the designation of managers and amendments to the operating agreement would be in accord with the weighted votes of the members based on their percentage of ownership. Section 4.2(b) of the agreement provided that they made business decisions together. In practice, however, McCoy and Fazio would discuss bonuses, and Fazio alone made the ultimate decision. The "management team" consisted of McCoy as president, Michele McBain as CFO, and Joseph Lyons as contract counsel.

¶ 6        No one on the management team had a written employment contract when hired. Fazio set the compensation for the management team, though he discussed those decisions with McCoy. The understanding reached with each employee was they would receive a base salary plus annual bonuses that were primarily determined by how much MARCorp profited during the year as well as each employee's individual performance. The bonuses were discretionary. When determining bonus amounts, Fazio assessed the prior year's performance at the start of the succeeding calendar year. He distributed the resulting bonuses for the prior year in February.

¶ 7        On February 8, 2017, Fazio sent an email to McCoy that included a spreadsheet indicating McCoy would receive a $1.3 million bonus immediately and an additional deferred bonus of $600,000. There was no mention on the spreadsheet that continued employment was a requirement to receive the remaining $600,000. Though given lesser amounts, the bonuses to McBain and

3

Lyons were structured in the same manner. Bonuses had never been deferred prior to the 2016 bonus distribution. McBain testified that when she asked Fazio the reason for deferring bonuses, he told her he was waiting for profits to come in on an investment that MARCorp would not receive until later in the year. MARCorp would pay the deferred bonus when it received payment for its investment. There was no mention that continued employment would be required to receive the deferred bonus at that time.

¶ 8        In 2018, Fazio again deferred part of the 2017 calendar year bonus payments. The remainder was to be paid to each employee over a three-year period. Emails from Fazio to McCoy during 2017 and 2018 advised McCoy that deferrals would not be paid unless the recipient remained employed until February of the next year when the next bonus was distributed. These emails establish that McCoy was not in agreement with the deferment proposed by Fazio. In fact, McCoy appended a compensation spreadsheet in a June 21, 2018, email to Fazio stating, "I think this captures your thoughts." That spreadsheet provided for a continued employment contingency for an employee for "carried interest," but included no such contingency for bonuses. Fazio responded minutes later specifically indicating that bonus deferrals conditioned upon continued employment remained an "open" item between them, specifically stating, "open items *** Deferred comp goes away if employee opts to leave or is fired for cause." No writing was submitted into evidence during trial that suggested this open item was ever resolved.

¶ 9        The management team requested that their compensation agreements be reduced to writing after they received the initial portions of their 2017 bonuses. In response, Fazio gave Lyons and McBain a "stay bonus" to continue their employment for ninety days while he created a written agreement. Fazio never presented a written proposal to the management team.

¶ 10 While these discussions with the management team occurred, MARCorp encountered an investment opportunity related to Beer Church Hospitality Group (Beer Church), a company formed to open a brewery located in New Buffalo, Michigan. Lyons knew Jane Simons, an owner of Beer Church, and initiated contact. Lyons used his MARCorp email address to communicate with Simons. Fazio and Lyons traveled to the Beer Church location in December 2017 to discuss the potential investment with the Beer Church owners. Discussions continued into January 2018. Fazio did not thereafter request Lyons follow up on the opportunity, nor request that McBain or McCoy conduct any due diligence on Beer Church's financial situation, which McBain testified was common practice before MARCorp invested in a business.

¶ 11 Ultimately, MARCorp did not invest in Beer Church. Instead, McCoy, McBain, and Lyons formed Holy Hops, LLC, to invest in Beer Church themselves. McCoy acted as the CEO of Holy Hops, and McBain the CFO. Holy Hops initially invested $262,000 in Beer Church, which ballooned over time to $1.47 million in investments. Holy Hops eventually filed suit against Beer Church to recover its investment which eventually settled, resulting in a total profit of approximately $120,000.

¶ 12 On February 15, 2019, Fazio distributed a 2018 compensation sheet to McCoy that contained his base salary, total bonus amount, how much he would immediately receive, and the deferral amount. For the first time, the compensation sheet identified a disbursement schedule for the deferral amount and indicated deferrals would not be paid unless the recipient remained employed in February when the deferral was disbursed. Fazio testified that 2019 was the first year that he, rather than another member of the team, generated the compensation sheets. McBain and Lyons received compensation sheets with the same disbursement schedule.

¶ 13    The total bonus amount for a given year was listed on the company's balance sheet as a liability without contingencies. McBain, who prepared the balance sheets for all prior years, testified that she recorded all the bonus payments given by MARCorp and that the lack of contingency listed on the balance sheets meant the respective bonus was earned when posted.

¶ 14    McCoy, McBain, and Lyons accepted their partial bonuses; however, they all resigned from their positions on February 19, 2019. Lyons terminated his contract with MARCorp. McCoy and McBain resigned via email, with McCoy stating he could not continue to work for MARCorp without documentation and structure regarding compensation. McBain testified at trial that, while she knew others on the team were not happy and may consider leaving MARCorp, she made the decision to resign on her own. As of the date of his resignation, MARCorp's balance sheets showed $277,091 owed to McCoy in deferred bonuses.

¶ 15    Fazio testified regarding the loan MARCorp gave McCoy. He stated that MARCorp loaned McCoy $200,000, and that they agreed to 2% interest. Fazio described the loan as a "demand loan" where repayment was to occur on demand, but no later than February 1, 2020. The 2018 compensation sheet that Fazio provided for McCoy included the loan as a pending matter and a debt owed to MARCorp. However, it did not list a term schedule and did not include any calculations regarding interest. After McCoy's resignation from MARCorp on February 19, 2019, Fazio contacted him several times to demand repayment of the loan. MARCorp did not receive any payments, and the entire $200,000 remained due at the time of trial.

¶ 16    The circuit court issued written findings on April 23, 2024, ruling in favor of MARCorp on its loan claim, and in favor of McCoy on his breach of contract and Wage Act claims, granting McCoy leave to file a petition for attorney's fees under the Act. It also found in McCoy's favor on MARCorp's fiduciary duty counterclaim.

6

¶ 17    The court made several factual findings in its written order. First, it found that "[t]here was a written employment agreement with McCoy and MARCorp that provided he would be paid a salary and a bonus," and there was no indication that a condition was placed on the bonus that deferred partial payment to a later date. McCoy was paid a salary and received bonuses every February for the year prior based on that year's performance. Fazio had complete discretion in determining bonus amounts. The 2016, 2017, and 2018 bonuses were not paid in full when announced the following February. The court found that the reason originally given for not paying the bonuses in full was due to financial constraints. The total unpaid amount owed to McCoy was $277,091. The unpaid balances were listed in the company's financial records as a liability, and there was no procedure providing when the remaining balance would be paid. There was no indication that liability was contingent on any condition or event in the future. When McCoy questioned it in February 2019, Fazio indicated that the unpaid balances were "retention bonuses" to be paid if the employee was still with the company the next February. After Fazio expressed this position, McCoy, McBain, and Lyons all resigned.

¶ 18    Turning to the claims related to Beer Church, the court found that Fazio and Lyons traveled to the location to discuss investing with the owners, but Fazio took no other action to actually invest. Fazio never suggested to McCoy that MARCorp invest and never requested McBain and McCoy perform due diligence on the potential investment, the standard practice within the company. When Fazio did not indicate he was interested in investing, Lyons, McCoy, and McBain invested their own money in the brewery.

¶ 19    The court next noted that MARCorp gave McCoy a $200,000 loan in 2018. It found no indication that this was a gift, and the parties did not discuss when repayment would occur or whether interest would be charged.

7

¶ 20      Based on the above factual findings, the court made its ruling on each claim. First, it found that MARCorp breached its employment contract with McCoy by failing to pay the deferred 2016, 2017, and 2018 bonuses. Moreover, McCoy was an employee as defined by the Wage Act and therefore entitled to the total bonuses earned, which included the unpaid amounts for 2016, 2017, and 2018. When it came to MARCorp's claims against McCoy, the court held that McCoy owed MARCorp $200,000 for the loan. It further found that this was an interest-free loan, as the parties never negotiated interest when executing the loan, and the court did not include interest in its judgment. McCoy's decision to invest in Beer Church did not create a breach of fiduciary duty because Fazio never indicated that he was interested in the opportunity and did not continue the process of investing by requesting due diligence or otherwise stating he wanted MARCorp to invest. The implementation of the continued employment requirement for unpaid bonuses is what caused the management team to resign, not anything orchestrated by McCoy. Thus there was no breach of fiduciary duty resulting from the resignations.

¶ 21      The circuit court awarded McCoy judgment for the balance remaining on his bonuses under both the Wage Act and his breach of contract claim. It ruled in favor of MARCorp regarding the $200,000 loan, but did not award interest. It denied all other relief sought by the parties.

¶ 22      McCoy filed a posttrial motion to clarify or reconsider interest in his claims, and a petition for attorney fees. The motion argued that the Wage Act allowed interest at 2% per month rather than the 2% per year originally awarded by the court. In response to the petition for attorney fees, MARCorp argued that the fees for services performed for its counterclaims should not be permitted as they were not related to the Wage Act claim. MARCorp also filed a motion requesting pre- and post-judgment interest for its claim for the $200,000 loan, citing the provision in the Illinois Interest Act (Interest Act) that provided for 5% prejudgment interest in certain situations.

8

¶ 23    When ruling on MARCorp's motion regarding prejudgment interest, the court stated:

"As Defendant/Counter-Plaintiff in this instant motion fails to establish based upon the evidence at trial that pre-judgment interest applies under Section 2 of the Interest Act and the findings and rulings of [the circuit court] do not state the purpose that the loan was established and there being no written evidence of the terms of the loan, the Court denies Defendant/Counter-Plaintiff's motion for pre-judgment interest under Section 2 of the Interest Act."

¶ 24    The court denied MARCorp's motion for prejudgment interest, granted its motion for post-judgment interest, granted McCoy's motion to clarify interest as well as his petition for attorney fees without the reduction sought by MARCorp.

¶ 25                                II. ANALYSIS

¶ 26    On appeal, MARCorp challenges the circuit court's findings regarding McCoy's breach of contract and Wage Act claims, the court's denial of prejudgment interest on MARCorp's loan claim against McCoy, its finding regarding whether McCoy breached his fiduciary duty, and the attorney fees awarded to McCoy. We address each of these arguments in turn.

¶ 27                            1. Standard of Review

¶ 28    This matter comes to us following a bench trial. We will not reverse the circuit court's judgment after a bench trial unless that finding was against the manifest weight of the evidence. *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 12. A judgment is against the manifest weight of the evidence if the opposite conclusion is apparent or the finding is arbitrary, unreasonable, or not based upon the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992). We will defer to the court's inferences from the evidence and findings made regarding the

9

credibility of witnesses, and we will not set aside its decision merely because a different conclusion could also be drawn from the evidence. *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 51.

¶ 29                          2. Fundamental Error Regarding the Court's Factual Findings

¶ 30          MARCorp initially contends that the court made a serious error that requires reversal of the contract and Wage Act claims. Specifically, MARCorp argues that the court was incorrect when it found a written employment agreement existed between McCoy and MARCorp. Both parties agree that there was no written agreement; therefore, this finding is erroneous. Taken it in context, we cannot conclude that this was a scrivener's error. However, MARCorp failed to raise this issue before the circuit court. See *Calabrese v. Benitez*, 2015 IL App (3d) 130827, ¶ 21 (holding that if a party fails to raise an issue in the circuit court, the issue is waived on appeal). Moreover, oral contracts are still enforceable (*Downs v. Rosenthal Collins Group, LLC*, 2011 IL App (1st) 090970, ¶ 49), and the court's error in making this finding is not fatal given that the evidence presented and factual findings made by the court clearly establish the parties entered into an oral contract.

¶ 31                                   3. Breach of Contract

¶ 32          Turning to the merits of the claims before us, MARCorp argues that the court erred in finding it breached its employment contract with McCoy because Fazio had sole authority to set discretionary bonuses each year, and it was permissible for him to place the condition of continued employment on the deferred bonuses. MARCorp asserts there was no breach because McCoy resigned prior to the deferment date and it no longer needed to pay his remaining bonus.

¶ 33          To establish the existence of a contract, McCoy had to show an offer, acceptance, and consideration of clear terms. *Brody v. Finch University of Health Sciences/The Chicago Medical*

10

*School*, 298 Ill. App. 3d 146, 154 (1998). An employment contract can be orally formed so long as these conditions are met. *Downs*, 2011 IL App (1st) 090970, ¶ 49.

¶ 34    McCoy and MARCorp clearly had an agreement for McCoy to be employed by the company. The initial oral agreement between MARCorp and McCoy was that MARCorp would pay McCoy a relatively low base salary, supplemented by significant discretionary bonuses based on MARCorp's and McCoy's performance for the year prior. Section 3.4 of the operating agreement provides that designation of managers and amendment to the operating agreement would be in accord with the weighted votes of the members based on their percentage of ownership, which clearly gave Fazio the upper hand with a 99% interest and lends credence to the evidence indicating Fazio effectively exercised sole discretion over bonuses. While bonuses were relegated to Fazio's sole discretion, neither a continued employment contingency nor deferral were part of that agreement.

¶ 35    There was no written policy or other statement indicating bonuses would be contingent upon continued employment until February 2019, the year after the management team requested written compensation agreements. Moreover, past practice did not contemplate continued employment as a condition. Fazio's emails in June 2018 specifically indicated this topic was unresolved, stating deferred bonuses remained an open item. No subsequent writing indicates Fazio and McCoy came to an agreement. Fazio first memorialized the contingency in the 2018 compensation spreadsheet he provided to McCoy in early 2019. It was therefore not against the manifest weight of the evidence for the court to find that there was no agreement regarding an employment contingency on deferred bonuses. It was also not unreasonable for the court to find that MARCorp breached the employment contract by withholding a portion of the bonus to McCoy because Fazio could not unilaterally place additional conditions on a bonus McCoy had already

11

been promised and earned for his performance during the previous year. Accordingly, we find no error in the court's decision that MARCorp breached its contract with McCoy.

¶ 36                                    4. The Wage Act

¶ 37        MARCorp next argues that the court erred when finding in McCoy's favor on the Wage Act claim for largely the same reasons as the breach of contract claim. MARCorp asserts that the yearly bonuses were discretionary and thus not "earned bonuses" as defined by the Wage Act.

¶ 38        When interpreting the Wage Act, courts must give effect to the intent of the legislature. *Illinois Department of Healthcare & Family Services v. Warner*, 227 Ill. 2d 223, 229 (2008). The most reliable indicator of the legislature's intent is the language of the statute, which must be given its plain, ordinary, and popularly understood meaning. *Id.* Further, when interpreting a statute, the court presumes that when the legislature enacted the law, it did not intend to produce absurd, inconvenient, or unjust results. *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 282 (2006).

¶ 39        The purpose of the Wage Act is to provide employees relief to receive timely and complete payment of earned wages and final compensation when they separate from an employer. See *Majmudar v. House of Spices (India), Inc.*, 2013 IL App (1st) 130292, ¶ 11; see also *Armstrong v. Hedlund Corp.*, 316 Ill. App. 3d 1097, 1107 (2000) (its purpose is "to insure the prompt and full payment of wages due workers at the time of separation from employment, either by discharge, layoff or quitting"). To state a claim under the Wage Act, employees are "required to demonstrate that they are owed compensation from [the employer] pursuant to an employment agreement." *Enger*, 812 F.3d at 568.

¶ 40        The Wage Act defines "wages" as "compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2 (West 2022). "Final compensation" is defined as payments to separated employees that consist of "wages,

salaries, earned commissions, *earned bonuses*, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties" (emphasis added). *Id.* Final compensation payments must be determinable at the time of or very soon after separation. See *McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 545 (2009).

¶ 41        It is undisputed that McCoy was an employee of MARCorp. Further, as previously established, there was an oral employment contract between the parties. The issue here is whether the deferred bonus is an "earned bonus" under the Wage Act. In determining this, we look to the Illinois Administrative Code for an interpretation of "earned bonus." Section 300.500, title 56 of the Code provides that:

> "A bonus is compensation given in addition to the required compensation for services performed. The Department does not maintain jurisdiction over discretionary or gratuitous bonuses. In order to receive compensation under the Act, *the bonus must be earned*.

> An employee has a right to an earned bonus *when there is an unequivocal promise by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and all of the required conditions for receiving the bonus set forth in the bonus agreement have been met*. Unless one of the conditions for the bonus is that the employee be on the payroll at the time of the bonus payout, the bonus is due and owing to the employee at the time of the separation." (Emphases added.) 56 Ill. Adm. Code 300.500 (2014).

¶ 42        MARCorp argues that the unpaid bonuses were not earned because McCoy did not meet the required condition for receiving the deferred bonus—continued employment. Imposing a

13

condition of continued employment may be permissible under the Wage Act; however, as discussed above, both parties did not agree to this term. In practice, MARCorp announced bonuses for any given calendar year in February of the following year. For several years, MARCorp paid the employees their bonuses in full every February. Beginning in 2017, a portion of the bonus payment became subject to deferment. This deferment applied to the 2016 bonuses and continued every year until the management team resigned. The circuit court's findings indicate that the reason for deferment was not to create a retention bonus but because of cash flow issues MARCorp had while awaiting the closing of a pending transaction. It was not until Fazio set out the 2018 bonuses that he added the contingency of continued employment.

¶ 43    It is important to note that MARCorp's balance sheets recorded the deferred bonuses as general, rather than contingent, liabilities when they were announced. McBain, who was responsible for MARCorp's books, testified this designation of the balance sheets meant the bonuses were considered earned when recorded. No evidence was presented to show that the bonuses were not earned, other than Fazio's unilateral decision to require continued employment when that was not agreed to by the employees. We have already established that Fazio's decision alone did not alter the conditions for paying already-earned bonuses. Thus, the only conditions placed on these bonuses were that Fazio had discretion to give bonuses every year based on the performance of the company and the employee. Given that these conditions were met, McCoy's bonus became earned when Fazio distributed the compensation sheets and announced the total bonus amounts. Further, as a result of this conclusion that the bonuses awarded were earned when the totals were communicated to the employees, we decline to agree with MARCorp's argument that McCoy is not entitled to the amount it seeks to defer. Therefore, the circuit court did not err

14

in concluding that MARCorp violated the Wage Act when it failed to pay McCoy his final compensation in the form of these deferred bonus amounts.

¶ 44                                    5. Breach of Fiduciary Duty

¶ 45        MARCorp next challenges the court's determination that MARCorp did not prove McCoy breached his fiduciary duty to the company. Specifically, MARCorp argues that McCoy breached that duty in two ways: (1) by making a personal investment in Beer Church when MARCorp had considered investing itself and (2) by orchestrating the mass resignation of the management team after they did not receive their full bonuses.

¶ 46        To prove breach of fiduciary duty, MARCorp must prove McCoy had a fiduciary duty to MARCorp, the duty was breached, and the breach proximately caused damages. *Neade v. Portes*, 193 Ill. 2d 433, 444 (2000). A fiduciary duty exists when a principal manifests assent to an agent that the agent shall act on the principal's behalf and the agent intends to do so. Restatement (Third) of Agency § 1.01 (2006). Employees, officers, and directors all have a duty of loyalty to the corporation. *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160-61 (1993). There is no doubt that McCoy was both an employee and an officer. As an officer, McCoy owed a greater duty than an ordinary employee. *Id.* MARCorp argues that McCoy breached this duty by taking a corporate opportunity when he invested in Beer Church and orchestrated the resignation of the management team. MARCorp further argues it is entitled to recapture all of McCoy's compensation from the time he invested in Beer Church in early 2018.

¶ 47        McCoy's fiduciary duty concerning Beer Church included a responsibility not to usurp corporate opportunities or to compete with the corporation for such opportunities. *Advantage Marketing Group, Inc. v. Keane*, 2019 IL App (1st) 181126, ¶ 23. A breach occurs when a fiduciary takes advantage of a business opportunity that rightfully belongs to the corporation. *Id.* "A

15

corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage." *Lindenhurst Drugs, Inc. v. Becker*, 154 Ill. App. 3d 61, 67 (1987). The appropriate question to consider is whether the fiduciary acquired something for himself that should belong to the corporation. *Indeck Energy Services, Inc. v. Depodesta*, 2021 IL 125733, ¶ 47. When a business is informed of a business opportunity and then declines to take such opportunity, the officer or employee is free to pursue the opportunity himself. *Kerrigan v. Unity Savings Association*, 58 Ill. 2d 20, 27-28 (1974); *Diedrick v. Helm*, 14 N.W.2d 913, 920 (Minn. 1944) (after a savings and loan association rejected the opportunity, the secretary was permitted to establish his own insurance agency).

¶ 48    Fazio became aware of MARCorp's opportunity to invest in Beer Church at the end of 2017. After visiting the location, he took no further action to pursue it. While Fazio mused to Lyons about investing, he had no additional discussions with the owners of Beer Church, nor did he request McBain and McCoy perform due diligence, the customary practice at MARCorp before making an investment. Further, evidence suggested that the owners of Beer Church desired a passive investor, a type of investment not normally undertaken by MARCorp. Nothing presented at trial suggested that Fazio and MARCorp, despite being aware of the opportunity, had any serious interest in the Beer Church investment opportunity.

¶ 49    Further, the circuit court found that McCoy and Holy Hops did not invest in Beer Church until after MARCorp received the opportunity and chose not to act on it. The evidence does not support MARCorp's argument that McCoy usurped its business opportunity when McCoy waited until after Fazio chose not to act on the investment opportunity before he invested via Holy Hops.

16

Accordingly, we conclude that the court's finding there was no breach of fiduciary duty related to Beer Church was not against the manifest weight of the evidence given the testimony at trial.

¶ 50    MARCorp also argues that McCoy breached his fiduciary duty by conspiring to orchestrate the resignation of the entire management team. It is well settled that orchestrating the mass exodus of employees is a breach of one's fiduciary duty. See *Dowd & Dowd Ltd. v. Gleason*, 352 Ill. App. 3d 365, 377 (2004). The circuit court found here, however, that there was no conspiracy as MARCorp alleged. Rather, the court found that the resignations were a direct result of MARCorp's attempt to withhold a portion of their bonuses contingent to ongoing employment. The management team requested a compensation agreement and instead received a deferment and contingency on their earned bonuses. The circuit court heard and weighed the evidence concluding there was clear reason for the resignations aside from McCoy's actions. We defer to the circuit court's findings regarding credibility of the witnesses at trial and the weight given to the evidence as it is in the best position to gauge such factors. *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 548 (2007). Here, we do not find the court's decision to be against the manifest weight of the evidence when the record indicates independent reasons exist for each member of the management team's resignation. See *Vician v. Vician*, 2016 IL App (2d) 160022, ¶ 27 ("[I]f the record contains evidence to support the trial court's judgment, that judgment should be affirmed.").

¶ 51    Finally, MARCorp must prove damages resulting from the breach in order to recover under a breach of fiduciary duty claim. *Chicago City Bank & Trust Co. v. Lesman*, 186 Ill. App. 3d 697, 701 (1989). MARCorp argues McCoy forfeited, and MARCorp is entitled to recapture, McCoy's salary from the date of the breaches forward. However, its recapture argument relates only to the Beer Church investment. At no point in this appeal does MARCorp argue for or quantify damages

17

related to its claim that McCoy breached his fiduciary duty by coordinating the team's resignations. Thus, MARCorp failed to prove all the elements required to prove a breach of fiduciary duty, and the circuit court did not err in finding in McCoy's favor under either theory.

¶ 52　　　　　　　　　　　　6. Prejudgment Interest under the Interest Act

¶ 53　　　　　　Next, we examine whether the court erred in finding that no prejudgment interest should be applied to MARCorp's loan claim. MARCorp argues that the loan to McCoy was "money lent or advanced for the use of another," thus falling under one of the categories for which the Interest Act applies and allows for prejudgment interest. 815 ILCS 205/2 (West 2022). McCoy argues, and the circuit court concluded, that there was no agreement to add interest to the loan amount, therefore prejudgment interest is not required. The circuit court's denial of pretrial interest involves the interpretation of the Interest Act and is subject to *de novo* review. *Carle Found. v. Department of Revenue*, 2023 IL App (4th) 200121, ¶¶ 26-27.

¶ 54　　　　　　McCoy asserts that MARCorp waived this issue on appeal because it did not file a motion to reconsider the circuit court's ruling on his motion requesting prejudgment interest. However, for nonjury cases, the failure to file a motion postjudgment does not limit our scope of review on appeal. Ill. S. Ct. R. 366(b)(3)(ii) (eff. Feb. 1, 1994) ("Neither the filing of nor the failure to file a post judgment motion limits the scope of review."); *City of Evanston v. Piotrowicz*, 20 Ill. 2d 512, 515 (1960) ("[N]o motion for a new trial or formal objection to rendition of a judgment is necessary in matters tried without a jury and can serve no purpose in preserving questions for review on appeal.").

¶ 55　　　　　　Section 2 of the Interest Act provides that:

　　　　　　　　"Creditors shall be allowed to receive at a rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other

18

instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account form the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." 815 ILCS 205/2 (West 2022).

¶ 56 The loan is clearly "money lent or advanced for the use of another." *Id.* Thus, under the statute, the loan is eligible to receive prejudgment interest pursuant to the Interest Act. McCoy contends MARCorp did not comply with the Interest Act's requirement that "[i]n the absence of an agreement between the creditor and debtor governing interest charges, upon 30 days' written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor." *Id.* What McCoy ignores when making this argument is that the plain language of the statute imposes a notice obligation on an "assignee or agent of the creditor," not the creditor itself. *Id.* We therefore conclude notice is not required under the facts presented in this case.

¶ 57 The circuit court found that there was no agreement between McCoy and MARCorp regarding interest and that it was a no interest loan. A simple reading of the statute finds that any money lent is eligible for prejudgment interest, with or without any agreement between the parties regarding interest. *Id.* The circuit court also concluded MARCorp could not be awarded interest under the Interest Act because the evidence did not demonstrate the purpose for which the loan was established. As conceded during oral argument, establishing the purpose of the loan is not required by the Interest Act. To the extent the court read these additional requirements into the statute without any statutory basis, its statutory interest conclusion was erroneous.

19

¶ 58    McCoy cites the Second District case of *Prigano v. Prigano*, 405 Ill. App. 3d 801, 820-21 (2010), for the proposition that MARCorp's only claim for interest would be under the Interest Act yet goes on to argue that the Interest Act allows interest only when there is an agreement between the creditor and debtor related to interest. McCoy seemingly ignores the holding in *Prigano*, that concluded that prejudgment interest was due under the Interest Act in a dispute for unjust enrichment and breach of an oral contract concerning the payment of life insurance proceeds to a widow in exchange for decedent's share of a business. *Id.* Those were claims in which there was obviously no prior agreement regarding interest. *Id.* Moreover, prejudgment interest was allowed under the Interest Act where, as in the case before this court, it was not prayed for in the complaint and plaintiff did not request it until after the circuit court had entered judgment. *Id.* at 821-22.

¶ 59    Despite citing *Prigano*, McCoy argues MARCorp's interest claim is precluded by its failure to request interest pursuant to the Interest Act in its counterclaim. It is certainly the case that MARCorp did not specifically make a request under the Interest Act until its posttrial motion on the issue. However, the Third District is aligned with the weight of authorities in finding "[t]he fact *** that the complaint did not ask for interest is of no moment, since the same is provided for by statute and will be read into the complaint." *Madison Park Bank v. Field*, 64 Ill. App. 3d 838, 843 (1978) (citing *Kansas Quality Construction, Inc. v. Chiasson*, 112 Ill. App. 2d 277, 287-88 (1969)); *Boyd v. United Farm Mutual Reinsurance Co.*, 231 Ill. App. 3d 992, 1000 (1982) (Fifth District decision affirming court's award of interest under the Interest Act where not requested in the complaint); *Kehoe v. Wildman, Harrold, Allen and Dixon*, 387 Ill. App. 3d 454, 472-73 (2008) (First District decision allowing interest under the Interest Act, reversing court's denial because the claim was not filed before judgment was entered).

¶ 60 The loan to McCoy is clearly money lent to another as described by the Interest Act, and MARCorp requested this interest at an appropriate time. We therefore find that prejudgment interest should have been awarded, and the court erred in denying MARCorp's motion. On remand, the court shall calculate statutory prejudgment interest from the date of February 19, 2019, the date the court concluded that McCoy was obligated to repay the loan.

¶ 61                                   7. Attorney Fees under the Wage Act

¶ 62 Finally, MARCorp argues that the attorney fees awarded were improper because all the fees awarded did not relate to the Wage Act claim. Instead of granting McCoy's request for all fees for the entire suit, MARCorp asserts the court should have eliminated those charges not related to the Wage Act claim, such as the work performed to defend McCoy for the loan and breach of fiduciary duty claims.

¶ 63 Parties are typically responsible for their own attorney fees. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 572 (2000). However, if authorized by agreement or statute, a court may award reasonable fees and costs to the prevailing party. "Whether and in what amount to award attorney fees is within the discretion of the trial court and its decision will not be disturbed on review absent an abuse of that discretion." *Med+Plus Neck and Back Pain Center, S.C. v. Noffsinger*, 311 Ill. App. 3d 853, 861 (2000). "An abuse of discretion only occurs when the trial court's decision is arbitrary, fanciful, unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 64 When a plaintiff presents several claims in one lawsuit and not all claims are successful, fees may be allowed for work performed on those claims involving a "common core of facts or based on related legal theories." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 66. MARCorp argues that McCoy is only entitled to fees related specifically to the Wage Act claim, while McCoy argues

21

that all fees are reasonable as the matter involved "a common core of facts" and "related legal theories." When fees are permitted by statute, the court must then determine whether the provision of the statute allows fees for related claims. *Id.*

¶ 65 The Wage Act provides, in pertinent part:

"Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover *** in a civil action ***. In a civil action, such employee shall also recover costs and all reasonable attorney's fees." 820 ILCS 115/14(a) (West 2022).

¶ 66 The statute contains no language limiting the collection of attorney fees to those services performed related to the specific claim. Specifically, the statute provides that "all reasonable attorney's fees" are recoverable "in a civil action" without limitation to the specific claims in that action. See *Thomas v. Weatherguard Construction Company, Inc.*, 2018 IL App (1st) 171238, ¶¶ 68-69 ("the act's use of the broad, all encompassing 'civil action' leads us to find that this statute does not present an exception to the general rule that a plaintiff may recover attorney fees for 'all claims involving a common core of facts or based on related legal theories' ").

¶ 67 The circuit court here found that all the claims involved either the same core facts or related legal theories. McCoy's claims were related to his employment with MARCorp and its refusal to pay his final wages. MARCorp in turn filed affirmative defenses and counterclaims. MARCorp filed its breach of fiduciary duty claims as both affirmative defenses and counterclaims. It maintains that McCoy was not entitled to any compensation following his alleged breach of fiduciary duty, the earliest occurring in February 2018 with the Beer Church investment. Thus, because the breach of fiduciary duty claims were used in defense of MARCorp's failure to pay

22

McCoy his final wages, they are related to McCoy's overall claim, and the circuit court did not abuse its discretion by including the related attorney fees in the award.

¶ 68        MARCorp is indeed correct, however, that its loan claim does not share any common facts or legal theories with any of the other claims in the lawsuit. The loan resulted from an agreement with MARCorp and Fazio, whereas the remaining claims involved questions regarding McCoy's employment and compensation agreement related to bonuses. There are no set of facts or legal theories that are common between McCoy's employment dispute and a loan agreement; therefore, the court erred in awarding McCoy attorney fees for the defense of MARCorp's loan claim. Accordingly, we must reverse this ruling and remand for a recalculation of attorney fees. On remand, the court is instructed to calculate and award such fees for services that are solely related to the claims for compensation and yearly bonuses, as well as the affirmative defenses related thereto. Any fees for work performed to defend the loan claim shall not be included in the total fees awarded.

¶ 69                                    III. CONCLUSION

¶ 70        We affirm the judgment of the circuit court of Du Page County regarding the breach of contract, Wage Act, and breach of fiduciary duty claims. We reverse the decision of the circuit court related to its denial of prejudgment interest and the award of attorney fees. The cause is remanded for calculation of prejudgment interest from February 19, 2019, to the date of judgment and for the reduction of attorney fees so as to exclude any work performed on the loan claim.

¶ 71        Affirmed in part and reversed in part; cause remanded.

23