2025 IL App (1st) 241116-U

FIRST DISTRICT,
SIXTH DIVISION
July 25, 2025

No. 1-24-1116

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JAMES BLACK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 2023 M1 107247 |
| | ) | |
| AMAZON.COM, LLC, | ) | Honorable |
| | ) | Maria M. Barlow, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Plaintiff's former employer did not breach employment contract by failing to pay sign-on bonus to employee who did not start work during the requisite period to earn the bonus.

¶ 2     Plaintiff James Black filed a breach of contract action against his former employer, defendant Amazon.com, LLC, alleging it failed to pay him a promised $3,000 sign-on bonus. Amazon alleged Black failed to earn the bonus because he did not show up for his first day of onsite work on November 22, 2021, and was fired. Although Black was rehired in January 2022,

Amazon was no longer offering the sign-on bonus at that time. Following a bench trial, the trial court entered judgment in favor of Amazon. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4        Black applied for employment with Amazon at its warehouse in Markham, Illinois. At the time, Amazon was offering a $3000 sign-on bonus for any new hire commencing employment between November 21 and December 18, 2021. The $3000 sign-on bonus for which Black was eligible includes several conditions. First, any eligible employee such as Black must "[s]tart their first day (Day 1) at a location offering a Sign-On Bonus at that time." Second, to earn the sign-on bonus, "an employee must remain employed with Amazon through and including their *final* installment eligibility date." (Emphasis in original.) Third, "[t]ermination of employment prior to a scheduled installment eligibility date results in any installments scheduled to occur on or after the termination date to be forfeited, even if later rehired." The policy advises the candidate that "Sign-On Bonuses are tied to specific locations throughout the year," and, if an employee's start date changes, "it is possible the new shift/location is not eligible for a Sign-On Bonus."

¶ 5        On November 10, 2021, Black attended a new hire appointment at the Markham facility and was conditionally offered employment pending the result of a background check and drug test. Amazon sent Black an email (the "contingent offer email") titled "Congratulations on Your Contingent Offer from Amazon!" The email states: "Your start date is not confirmed until you receive a confirmation email from Amazon. *** You will receive an email/text from Amazon with the Subject line: 'Thanks for Scheduling Your First Day On-Site' with full details about your start date and how to prepare."

¶ 6    On November 12, 2021, Amazon allegedly sent Black a letter setting forth the terms of his employment (the "hiring letter"). The letter states that Black's employment would commence on November 19, 2021, at which time he would have access to online orientation, and his first day onsite would be November 22, 2021. The letter advises Black that he would be "an employee-at-will, meaning that either you or the Company may terminate our relationship at any time for any reason, with or without cause."

¶ 7    Black denies receiving the hiring letter, although Amazon's records reflect a digital signature, purportedly by Black, accepting the terms of employment set forth in the letter. It is undisputed Black did not appear for work on November 22, 2021. On November 25, 2021, Black received a notice of termination of employment.

¶ 8    Upon receiving the notice of termination, Black contacted Amazon's employee resource center. He was then rehired by the Markham warehouse, and his first day of employment was January 12, 2022. He was not given the $3000 sign-on bonus despite demand letters he sent to the human resources/payroll department in June 2022 and March 2023.

¶ 9    On March 30, 2023, Black filed the instant suit, alleging Amazon's failure to pay him the bonus was a breach of contract. The case proceeded to a bench trial at which Black orally amended his complaint to add a claim for violation of the Illinois Wage Payment Collection Act (Wage Act) (820 ILCS 115/1 *et seq.* (West 2008)) and sought a penalty of $103,650. Black testified that on November 10, 2021, he went to the Markham facility for his new hire appointment. On November 17, he called the employee resource number. After entering his information, he was verified as an employee, and a recording advised him to be on the lookout for an email about his first day. Black also received an email from Amazon directing him to complete online training, which he did on November 19.

¶ 10       Black testified he "never saw" the hiring letter informing him of his start date. After "sitting and waiting," he received a termination letter on November 25. He contacted the Amazon employment resource center, was given a new start date, and began work on January 12, 2022, "when they were hiring for this location again."

¶ 11       Steven Vecchio also testified at trial. Vecchio is a senior manager of product management who oversees employee bonuses for warehouse workers and helped write the sign-on bonus policy for Amazon. Vecchio testified Amazon offers sign-on bonuses "at select sites for predefined periods of time to attract applicants." They are commonly offered in November and December to meet increased customer demands of the holiday season. Vecchio testified an employee would not be entitled to a bonus if they pushed back their first day to a date where the site was not offering the bonus. Additionally, to earn the full sign-on bonus, an employee must remain employed with Amazon through and including the final installment eligibility date (180 days). "Termination of employment prior to a scheduled installment eligibility date results in any installments scheduled to occur on or after the termination date to be forfeited, even if later rehired."

¶ 12       According to Amazon's records, the Markham warehouse had a sign-on bonus for employees starting between November 21 to December 18, 2021, but no bonus on January 12, 2022. Vecchio testified that Black's start date being changed from November 22 to January 12 disqualified him for the bonus.

¶ 13       At the end of trial, the court entered judgment for Amazon. The court declined to enter a finding as to whether Black received the hiring letter, stating:

> "I'm not 100 percent clear as to whether or not you received [the hiring letter] and that was your signature or not. But that doesn't change the fact that in order for you to receive

this bonus, you needed to start in November. You didn't do that. Okay? So I don't know if it was your fault or Amazon's fault. It could very well have been Amazon's fault. *** It could have been an internal mistake. However, what I do know is that you didn't start when you were supposed to."

The court found that since Black did not start work onsite during the requisite sign-on bonus period (November 21 to December 18), he did not meet the requirements for the bonus.

¶ 14                                    II. ANALYSIS

¶ 15        In reviewing a judgment after a bench trial, we defer to the court's factual findings unless they are against the manifest weight of the evidence. *Staes & Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35. A finding is against the manifest weight of the evidence only if the opposite conclusion is apparent or if it appears to be arbitrary, unreasonable, or not based on the evidence. *Green v. Papa*, 2014 IL App (5th) 130029, ¶ 32. It is the trial court's province as the finder of fact to resolve conflicts in the evidence, pass upon the credibility of witnesses, and decide the weight to accord their testimony. *Prairie Eye Center, Ltd. v. Butler*, 329 Ill. App. 3d 293, 298-99 (2002).

¶ 16        Vecchio's uncontroverted testimony establishes that Black was required to start his employment between November 21 to December 18, 2021, to earn the bonus. He did not do so. As an at-will employee, he was terminated by Amazon and subsequently re-hired, and his first day on site was January 12, 2022, when no bonus was offered. Even if he was not fired and rehired, and his start date was simply pushed to January 12, 2022, it is undisputed he did not start his first day (Day 1) on a date when the location was offering a sign-on bonus. Based on this evidence, the trial court did not err in finding for Amazon on Black's breach of contract claim.

¶ 17    Similarly, the sign-on bonus did not constitute an "earned bonus" to which Black is entitled under the Wage Act. The purpose of the Wage Act is to ensure employees who separate from an employer receive prompt and full payment of wages due, including "earned bonuses." *McCoy v. MARCorp Financial, LLC*, 2025 IL App (3d) 240357-U, ¶ 39. The Illinois Administrative Code interprets "earned bonus" as follows:

> "An employee has a right to an earned bonus when there is an unequivocal promise by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and *all of the required conditions for receiving the bonus set forth in the bonus agreement have been met*." (Emphasis added.) 56 Ill. Adm.Code § 300.500(a) (eff. August 22, 2014).

Here, Black never worked a day until January 12, 2022. He was terminated from his original date of hire almost immediately in November. As the policy provides, "[t]ermination of employment prior to a scheduled installment eligibility date results in any installments scheduled to occur on or after the termination date to be forfeited, even if later rehired." Although Black was subsequently rehired, his new start date was after the bonus eligibility period had ended. Thus, he did not meet all the contractual conditions to earn the bonus.

¶ 18    Black argues that he never received the hiring letter or any other notice of his purported November 22, 2021, start date. In support, he cites the contingent offer email, which refers to a possible start date of November 22, 2021 "(or earlier!)" and states that he will receive an "email/text" from Amazon—not a physical letter—about his start date. He asserts the trial court "ignor[ed]" the contingent offer email, which demonstrates the hiring letter is "not valid" and "not how Amazon operates during the hiring process."

¶ 19     As noted, it is the province of the trial court to resolve conflicts in evidence. *Prairie Eye Center*, 329 Ill. App. 3d at 298-99. More importantly, the trial court did not base its judgment on the hiring letter. The court explicitly stated it was "not certain" whether Black ever received the letter, but regardless, his failure to begin work during the bonus eligibility period was dispositive of his claim.

¶ 20     Black also argues he "was at work on [his] new first day" of January 12, 2022, and he completed all other requirements to earn the bonus (*e.g.*, passing his drug test and background check). As discussed, the Markham facility was not offering a bonus for employees starting on January 12, 2022. Although Black completed some conditions to earn the bonus, he did not meet "*all* of the required conditions" (emphasis added) (56 Ill. Adm. Code § 300.500(a) (eff. August 22, 2014)) and was therefore not entitled to the bonus.

¶ 21                          III. CONCLUSION

¶ 22     For the foregoing reasons, we affirm the judgment of the trial court.

¶ 23     Affirmed.